UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. 19-cr-00265-01 |
| VERSUS | JUDGE FOOTE |
| PHILLIP CROSBY (01) | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

**Introduction**

Phillip Crosby ("Defendant") is charged with possession with intent to distribute methamphetamine and cocaine, possession of a firearm by a felon, and possession of a firearm and ammunition in furtherance of a drug trafficking crime. The charges arose out of a traffic stop and subsequent search of a vehicle in which Defendant was a passenger. Before the court is Defendant's Motion to Suppress (Doc. 21) in which Defendant seeks to suppress the evidence and statements obtained during the search. For the reasons that follow, it is recommended that Defendant's motion be denied.

**Relevant Facts**

A hearing was held on the motion to suppress. The following facts were established. Trooper Matthew Titus, a canine handler for the Louisiana State Police, was traveling westbound on I-20 in Bossier when he received a call from the DEA Task Force. Trooper Titus was informed of an ongoing DEA investigation for suspected narcotics trafficking involving a white Chevrolet Tahoe. Trooper Titus was asked to conduct a traffic stop of the vehicle.

Trooper Titus located the Tahoe as it was entering I-20 from Old Minden Road. He followed the vehicle and saw it cross the white fog line on the right side of the lane, travel in the outside lane, then move over toward the white line on the left side. He decided to stop the vehicle for improper lane usage. He followed the vehicle a little further so that he could call the license plate number in to dispatch. There was also no shoulder at that point in the roadway, and Titus wanted to wait for a safer place to conduct the traffic stop.

After following the vehicle a short distance, Trooper Titus activated his lights and conducted a traffic stop. Titus exited his vehicle. He asked the driver of the Tahoe to exit the vehicle and come to the back of the Tahoe.

Trooper Titus requested the driver's license and asked the driver who owned the Tahoe. The driver stated that his wife was the owner of the Tahoe and that the registration and insurance were in the vehicle.

Trooper Titus then went to the right rear door of the Tahoe. The window had tint, but Trooper Titus could tell there were multiple occupants in the vehicle. He opened the right rear door, introduced himself to the two females sitting in the back seat, and asked for their driver's licenses. Trooper Titus smelled the odor of alcohol and marijuana in the Tahoe.

Defendant was sitting in the front passenger seat of the Tahoe. The front passenger door was open and the window was down. Trooper Titus made contact with Defendant, and Trooper Titus again smelled marijuana. Defendant told Trooper Titus that his name was Antonio Crosby and his date of birth was May 17, 1985. Trooper Titus then retrieved the vehicle insurance and registration from the glove box.

Trooper Titus walked back to the driver and asked him questions about the group's travel plans. The driver asked Trooper Titus to bring him a coat from the Tahoe. Trooper Titus walked to the rear right passenger door, and Defendant handed Titus a hooded sweatshirt, which also had the odor of marijuana. Titus gave the sweatshirt to the driver and then went back to his patrol car to run the information about the vehicle and its occupants.

The results came back on the driver of the vehicle and the two female occupants, but Trooper Titus did not find any information on the name and date of birth that Defendant gave him. Trooper Shorter, who had arrived at the scene to provide back up, was standing at the passenger window of the patrol vehicle. Titus told Shorter to ask the driver for the name of the passenger in the Tahoe. The driver told Trooper Shorter that the passenger's name was Phillip, which was not the name the passenger had given Trooper Titus.

Trooper Titus informed the driver that he had smelled the odor of marijuana in the vehicle and that he was going to search the vehicle. Trooper Titus requested that the occupants step out of the vehicle while he and Trooper Shorter conducted the search. He found a black backpack in the backseat. The backpack contained a digital scale, a box of sandwich baggies, and a Ruger handgun. The serial number on the gun had been removed. Trooper Titus asked who owned the gun, and Defendant said it was his.

At that point, several Bossier Police Department officers had arrived at the scene. One of them informed Trooper Titus that Defendant was a convicted felon.

Trooper Titus continued the search of the Tahoe and found a .40 caliber rifle with an attached high-capacity drum magazine under the second-row seat. Defendant told

Trooper Titus that the rifle was also his. A check on the rifle revealed that it had been reported stolen through the Shreveport Police Department. Defendant was then placed under arrest for possession of a firearm with an obliterated serial number and a stolen firearm. The driver was given a citation for improper lane usage, but no one else in the vehicle was arrested.

**Law and Analysis**

    **A. Initial Traffic Stop**

"The reasonableness of traffic stops and investigative detentions of motorists who are suspected of criminal activity is analyzed under the framework established in Terry v. Ohio, 392 U.S. 1 (1968)." United States v. Rosales-Giron, 592 Fed. Appx. 246, 250 (5th Cir. 2014); quoting United States v. Stevens, 487 F.3d 232, 244 (5th Cir. 2007). "Under Terry, we determine the reasonableness of an investigative stop by examining: (1) whether the officer's action of stopping the vehicle was justified at its inception, and (2) whether the officer's actions were reasonably related in scope to the circumstances that justified the stop." Id.

For a traffic stop to be justified at its inception, an officer need only have reasonable suspicion that "some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." United States v. Lopez-Moreno, 420 F.3d 420, 430 (5th Cir. 2005). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 810 (1996). Lawful cause to make a traffic stop

exists when a defendant commits a traffic violation and a law-enforcement officer observes the violation. United States v. Khanalizadeh, 493 F.3d 479, 482 (5th Cir. 2007).

Defendant argues in his motion to suppress that the traffic stop was not justified at its inception. Defendant does not challenge the second Terry prong.

Trooper Titus testified that the vehicle in which Defendant was a passenger crossed the right fog line. The court finds Trooper Titus' testimony to be credible. The Louisiana Supreme Court has held that crossing the fog line is improper lane usage in violation of La. R.S. 32:79. State v. Waters, 780 So.2d 1053 (La. 2001); United States v. Hernandez, 744 Fed. Appx. 873 (5th Cir. 2018) ("Because Hernandez's vehicle briefly touched the fog line, the state trooper had probable cause to believe a traffic violation occurred, and this reasonable suspicion justified the traffic stop at its inception."). See also United States v. Bell-Brayboy, 2017 WL 5078400 (W.D. La. 2017) (Hornsby, M.J.). Accordingly, the court finds that the traffic stop was justified at its inception.

**B. Search of Vehicle**

Defendant argues in his motion to suppress that the Government cannot prove a valid exception to the Fourth Amendment's warrant requirement in connection with the search of the vehicle. Trooper Titus testified that he detected the smell of marijuana coming out of the vehicle while he was talking to the occupants of the vehicle. Defendant gave Trooper Titus a sweatshirt to give to the driver of the vehicle, and Trooper Titus also smelled marijuana on the sweatshirt.

The Fifth Circuit has repeatedly held that the smell of marijuana gives rise to probable cause to search a vehicle for drugs. See, e.g., United States v. Lork, 132 Fed.

Appx. 34 (5th Cir. 2005) (detectable odor of marijuana emanating from a vehicle provides probable cause for the search of the vehicle); United States v. McSween, 53 F.3d 684, 686-687 (5th Cir. 1995) (the smell of marijuana alone may be enough for a finding of probable cause); United States v. Reed, 882 F.2d 147, 149 (5th Cir.1989) (the officer's detection of marijuana "in itself . . . justified the subsequent search of [the defendant's] vehicle"); United States v. Henke, 775 F.2d 641, 645 (5th Cir.1985) ("Once the officer smelled the marijuana, he had probable cause to search the vehicle."); United States v. Gordon, 722 F.2d 112, 114 (5th Cir.1983) (same); and United States v. McLaughlin, 578 F.2d 1180, 1183 (5th Cir. 1978) (same). Accordingly, the court finds that Trooper Titus had probable cause to search the vehicle.

### C. Defendant's Statements

Defendant's motion to suppress initially challenged the voluntariness of his statements made at the scene and at Troop G's headquarters. That argument was withdrawn at the hearing on the motion, so the Government did not introduce additional evidence on those points.

Accordingly,

It is recommended that Defendant's Motion to Suppress (Doc. 21) be denied.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have **fourteen (14) days** from the date of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Crim. P. 45(b). A party may respond

to another party's objections within **fourteen (14) days** from the filing of the objections. Counsel are directed to furnish a paper copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 13th day of January, 2020.

Mark L. Hornsby
U.S. Magistrate Judge